IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JULIE A. MILLS                                                        PLAINTIFF

v.                Civil No. 16-2209-PKH-MEF

NANCY A. BERRYHILL, Commissioner
Social Security Administration[1]                             DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Julie Mills, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying her claim for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**      **Procedural Background:**

Plaintiff filed her application for Supplemental Security Income on April 30, 2010, due to degenerative disk disease ("DDD"), depression, anxiety, and obsessive compulsive disorder ("OCD"). (Tr. 111-116, 144, 160-161, 181-182, 775, 790-791) On August 17, 2011, the ALJ entered an unfavorable decision. (Tr. 478-479, 504-515) Upon appeal to this Court, the matter was remanded on December 23, 2013. (Tr. 463-470) On February 5, 2015, the ALJ held a supplemental hearing. (Tr. 423-459) Plaintiff was present and represented by counsel.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

On June 8, 2015, the ALJ found Plaintiff's carpal tunnel syndrome ("CTS"), DDD, and anxiety were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 402) After partially discrediting Plaintiff's subjective complaints, the ALJ determined that she retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally balance, stoop, kneel, climb, crouch, and crawl. She can occasionally reach overhead bilaterally and occasionally finger and handle bilaterally. She is able to perform simple routine repetitive tasks in a setting where interpersonal contact is incidental to the work performed. She can respond to supervision that is simple, direct and concrete.

(Tr. 405) With the assistance of a vocational expert, the ALJ then concluded that Plaintiff could perform work as a callout operator and surveillance systems monitor. (Tr. 414)

Subsequently, Plaintiff filed this action. (ECF No. 1) This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 10, 11)

**II.     Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have

supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on*

*other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### III.  Relevant Medical Evidence:

The record contains over 1,500 pages of forms, documents, and medical records related to the Plaintiff's claim for benefits. The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary to address Plaintiff's issues on appeal.

Although Plaintiff alleged an onset date of July 2008, SSI benefits are not payable for a period prior to the filing date of claimant's application, April 30, 2010. 20 C.F.R. § 416.335. Further, we note that records do not document treatment for the impairments forming the basis of her appeal until February 2010.

On February 9, 2010, Plaintiff was treated by Nurse Practitioner Mary Stanley for complaints of right shoulder pain and numbness in her right hand and fingers. (Tr. 217-218) X-rays of the right shoulder and cervical spine revealed mild osteoarthritis in the right shoulder and DDD in the cervical spine. (Tr. 247) Nurse Stanley prescribed Mobic, indicating an MRI would be ordered if her symptoms persisted. On follow-up, Nurse Stanley documented a decreased range of motion in the cervical spine with pain in the right shoulder on 90-degree angle rotation. (Tr. 215-216) Accordingly, she ordered an MRI of her cervical spine, which showed very mild spondylosis at the C3-4 and C4-5 levels without significant foraminal narrowing; a possible tiny central/left paracentral disk bulge versus protrusion at the C4-5 level; spondylitic ridging and disk protrusion at the C5-6 level with canal stenosis greatest along the left side where the stenosis was marked and with mild flattening of the left side of

the spinal cord and left foraminal narrowing; and, spondylitic ridging, broad disk protrusion, mild canal stenosis, and mild biforaminal stenosis at the C6-7 level.  (Tr. 227-228)

In April 2010, Plaintiff returned to Nurse Stanley with reports of continued cervical pain radiating into her right shoulder.  (Tr. 213-214)  Nurse Stanley noted tenderness in the right shoulder on range of motion and with palpation.  She diagnosed unresolved right shoulder and cervical spine pain, noting Plaintiff's left side appeared to be more affected than her right.

In July 2010, Plaintiff underwent a general physical exam with Dr. Paul Tucker.  (Tr. 289-296)   On examination, he noted a limited range of motion in both shoulders (110/150 degrees); pain with straight leg raising beyond 90 degrees; a limited range of motion in her knees (130/150 degrees); weakness of both hamstrings and hip flexors; weakness of the ankle plantar flexion (20/40 degrees); 50% normal grip strength on the right; and, 25% normal grip strength on the left.  Based on this exam and Plaintiff's MRI results, Dr. Tucker opined that her shoulder problems would interfere with her ability to perform heavy manual labor.

In August 2010, Dr. Sharon Keith reviewed the evidence of record and concluded Plaintiff could perform light work with limited overhead reaching bilaterally.  (Tr. 303-309)

Plaintiff did not seek out further treatment for her neck and back pain with referred pain into her legs and arms until December 2010. (Tr. 321-322)  Nurse Stanley noted tenderness in the spinous process and muscles surrounding the cervical spine, rigidity, a decreased range of motion and bony tenderness in the thoracic and lumbar spine, and muscle spasms in the lumbar spine.  She again prescribed only Meloxicam (Mobic).

On February 11, 2011, Nurse Stanley completed the first of two medical source statements.  (Tr. 374-375)  She indicated that Plaintiff could frequently lift/carry only five

5

pounds; stand and walk a total of one hour per day; sit for a total of one to two hours per day; and, reach, handle, finger, grip, and feel less than two hours out of an eight-hour workday. Nurse Stanley also indicated Plaintiff would need to lie in a supine position for five to six hours during an eight-hour workday; could not climb, balance, squat, kneel, crouch, bend, or stoop; and, she would need to avoid all exposure to extreme heat, wetness, and hazards. (Tr. 374-375)

On March 1, 2011, Nurse Stanley treated Plaintiff for pain radiating into her left shoulder and hand. (Tr. 385-386) It appears, however, that her pain was responding to the Meloxicam, as she reported a pain rating of 4/10.

On March 11, 2011, Nurse Stanley completed a second medical source statement, deviating somewhat from her prior statement. She indicated Plaintiff could lift/carry less than ten pounds frequently; reach, handle, finger, grip, feel, and finger less than two hours per workday; climb, balance, squat, kneel, crouch, and bend less than two hours per workday; needed to elevate her lower extremities twice per day and lie in a supine position for three hours during the workday; would need three or four work breaks during the workday; must avoid concentrated exposure to noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards; and, she must avoid all exposure to extreme cold, extreme heat, wetness, and humidity. (Tr. 1307-1309)

Plaintiff was next treated for decreased range of motion and strength in her left shoulder and neck on October 10, 2011, some seven months later. (Tr. 881-882) Nurse Stanley prescribed Cymbalta.

Plaintiff again waited seven months before seeking out further treatment. On May 4, 2012, Nurse Stanley noted a decreased range of motion and tenderness in both shoulders and the lumbar spine. Plaintiff reported that treatment had afforded her only mild relief, and Nurse Stanley noted that Plaintiff's risk factors included a lack of exercise and a sedentary lifestyle. She recommended bone and joint exercises and warm compresses.

On February 21, 2013, Dr. Terry Bishop discharged Plaintiff from services at Western Arkansas Counseling and Guidance Center because she had attended only one individual therapy session and two intake appointments since establishing care in October 2011. (Tr. 919-926) At that time, her diagnosis was OCD.

On June 9, 2014, Plaintiff presented to Dr. Nathan Bennett, an associate of Nurse Stanley's, requesting a refill of Neurontin. (Tr. 956-957) She also asked him to complete her disability paperwork, but he refused, explaining that disability paperwork and applications were not part of his practice. He noted chronic pain in the neck, shoulders, and low back with mild paracervical tenderness on exam and refilled her prescription for Neurontin.

On July 10, 2014, Plaintiff returned to Dr. Bennett requesting a full work-up for her chronic neck, shoulder, and low back pain. (Tr. 958-959) She also complained of numbness and tingling in her hands, reporting a past diagnosis of radiculopathy. Dr. Bennett diagnosed joint pain, cervical back pain with evidence of disk disease, DDD, lumbar back pain, fatigue, numbness and tingling in the hands with no edema or tenderness in the shoulders, and cervical and lumbar tenderness. He advised weight loss and daily exercise.

On August 5, 2014, the ALJ referred Plaintiff to Dr. David Oberlander for a consultative neurological exam. (Tr. 1011-1018) On examination, Dr. Oberlander noted

7

spasm in the neck and low back associated with a reduced range of motion. She had slight, subtle weakness in both hands, her fine motor skills were slightly impacted in the right hand, and she showed reduced sensory appreciation to light touch in the left and right index fingers with bilateral Tinel and Phalen signs at the wrist. An electromyography also showed bilateral CTS with bilateral median nerve compression at the wrist and denervation in the right L5-S1 innervated muscle of the right leg indicative of a prior nerve root injury. He then completed an RFC assessment indicating Plaintiff could lift/carry up to 20 pounds occasionally; sit and stand a total of three hours per day; walk a total of one to two hours per day; frequently reach overhead; occasionally handle, finger, feel, and push/pull bilaterally; occasionally use right foot to operate foot controls; never climb; and, occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 1006-1010)

On August 14, 2014, Plaintiff returned to Dr. Bennett's office to obtain her test results. (Tr. 960-961) She reported doing well, indicating that she only experienced neck pain from time to time. Based on lab tests indicating low thyroid function, Dr. Bennett prescribed Synthroid.

On September 4, 2014, Plaintiff returned to Western Guidance and Counseling Center. (Tr. 988-993) Dr. Rachel Hopper diagnosed her with OCD, depressive disorder with psychotic features, post-traumatic stress syndrome ("PTSD"), and panic disorder with agoraphobia. She also assessed Plaintiff with a global assessment of functioning score of 45, indicative of severe symptomology. Dr. Hopper recommended individual therapy and medication management to address her depression, anxiety, and limits in daily functioning. Plaintiff, however, cancelled her follow-up appointment on October 23, 2014. (Tr. 995)

On January 29, 2015, Dr. Angela Chapman completed a master treatment plan, noting that Plaintiff preferred individual therapy only, with a strong desire to avoid medication. (Tr. 1033-1040)

## IV. Discussion:

Plaintiff raises four issues on appeal: 1) Whether the ALJ followed the instructions of the remand order issued by this Court; 2) Whether the ALJ erred at step two by failing to include her shoulder impairment, PTSD, and panic disorder with agoraphobia as severe impairments; 3) Whether the ALJ's RFC is supported by substantial evidence; and, 4) Whether the jobs identified by the vocational expert at step five actually exist in significant numbers in the economy.

### A. Instructions on Remand:

On November 6, 2013, this Court remanded the case to the Commissioner for further consideration of the Plaintiff's RFC. After reviewing the record, the Court concluded as follows:

> The evidence reveals that Plaintiff suffered from DDD with disk protrusion at the C5-6, canal stenosis along the left side, mild flattening of the left spinal cord, left foraminal narrowing, and broad disk protrusion at the C6-7 level with mild canal stenosis and mild biforaminal stenosis. Tr. 227. According to Plaintiff, this resulted in referred symptomology in her arms and hands, resulting in a diminished ability to grip and handle bilaterally. Tr. 327, 385-386. In July 2010, Plaintiff underwent a general physical examination with Dr. Paul Tucker. His examination revealed a 50% grip deficit in her right hand and a 25% deficit in her left hand. Tr. 289. Plaintiff's own treating nurse practitioner, Mary Stanley, also opined that Plaintiff could reach in all directions, handle, finger, grip, and feel for less than two hours during an eight-hour workday. Tr. 375. The ALJ dismissed Ms. Stanley's assessment contending that it is not supported by the overall medical evidence of record. We disagree. The ALJ also stated that he gave "great weight" to the opinion of Dr. Tucker, but failed to make any reference to his notations regarding her

9

>  diminished grip strength in his RFC. Accordingly, we believe remand is necessary to allow the ALJ to reconsider Plaintiff's RFC.

(Tr. 468-469) Plaintiff now contends the ALJ did not follow the mandate of this Court because, on remand, he again claims to give great weight to the opinion of Dr. Tucker, discounts Nurse Stanley's assessment, and asserts that great weight is given to the assessment of consultative neurologist, Dr. Oberlander, while failing to include appropriate manipulative limitations in the RFC. After reviewing both the remand order and the record in this case, the Court finds that the ALJ properly reconsidered Plaintiff's RFC. On remand, he concluded that Plaintiff's CTS was a severe impairment and included overhead reaching, fingering, and handling limitations in the RFC. Thus, we find that the ALJ followed the mandate of this Court.

### B. Severe Impairments:

Plaintiff also insists that the ALJ's Step Two determination is flawed because he did not include her bilateral shoulder impairment, post-traumatic stress disorder, and panic disorder with agoraphobia as severe impairments. At Step Two, a claimant has the burden of providing evidence of functional limitations in support of their contention of disability. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

We note, however, that the regulations require the ALJ to consider the impact of all the Plaintiff's impairments on RFC, regardless of whether the impairments are found to be severe

10

or non-severe. *See* 20 C.F.R § 404.1545(2). Thus, error at Step Two only requires reversal when the limitations imposed by the impairment are not properly included in the RFC determination. Otherwise, reversal would be futile.

On remand, the ALJ concluded that Plaintiff's only severe impairments were CTS, DDD, and anxiety. A review of the record reveals, although not found to be severe, the ALJ did include reasonable limitations arising from Plaintiff's shoulder impairment (lifting/carrying limitations and occasional overhead reaching) in the RFC assessment. Further, the ALJ did acknowledge Dr. Rachel Hopper's diagnoses of PTSD and panic disorder with agoraphobia, but also noted Plaintiff's noncompliance with the treatment prescribed. Plaintiff was not diagnosed with PTSD or panic disorder with agoraphobia until September 2014. (Tr. 988-993) She then cancelled her follow-up appointment in October 2014, and she did not return to Western Arkansas Counseling and Guidance Center until January 2015. (Tr. 995, 1033-1040) Plaintiff's history of inconsistent treatment for these impairments, coupled with her failure to comply with the prescribed treatment, support a conclusion that these impairments were not as severe as alleged. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding "a claimant's noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion and, therefore, can be considered in determining whether to give that opinion controlling weight."); *see also See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments). Further, we find that the RFC restrictions on interpersonal contact; simple, routine, and repetitive tasks;

11

and, simple, direct, and concrete supervision were adequate to cover any limitations resulting from these impairments.

### C. RFC:

Plaintiff next contends that the RFC determination is not supported by substantial evidence. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing his or her RFC. *Vossen,* 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Essentially, Plaintiff asserts that the ALJ's failure to align his RFC precisely with any of the RFC assessments of record resulted in an RFC determination that is not supported by substantial evidence. Plaintiff is incorrect. *See Martise v.* Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (holding ALJ is not required to rely entirely on a particular physician's opinion). While the record must include some medical evidence reflecting the Plaintiff's ability to perform

work-related tasks, the actual RFC determination is made by the ALJ; and, the ALJ is free to disregard any limitations that are not supported by the overall record.

Plaintiff also contends that the ALJ cannot rely on the assessments of non-examining consultants. We note that the opinion of a non-examining physician, standing alone, does not constitute substantial evidence in the record in the face of a conflicting assessment of a treating physician. *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999). However, if the ALJ does not rely solely on the non-examining physician's opinion, but also conducts an independent review of the medical evidence and other evidence, as was done in this case, then the record will be found to contain substantial evidence to support the ALJ's RFC determination. *Krogmeier v. Barnhart,* 294 F.3d 1019, 1024 (8th Cir. 2002).

Here, the Court finds that the ALJ reviewed the evidence, provided good reasons for his deviation from the assessments of both the examining and non-examining consultants, and properly determined Plaintiff's RFC. As previously mentioned, Dr. Tucker conducted a general physical exam in July 2010, noting a reduced range of motion in Plaintiff's shoulder and elbows, reduced muscle strength in her deltoids and triceps, decreased arm swing on the left side, 50% normal grip strength on the right, and 25% normal grip strength on the left. Dr. Tucker concluded that her shoulder problems would interfere with her ability to do heavy manual labor. (Tr. 289-296)

In August 2010, non-examining consultant, Dr. Sharon Keith reviewed the evidence of record and opined Plaintiff could perform light work with limited overhead reaching bilaterally, due in large part to her mild osteoarthritis of the right shoulder and Dr. Tucker's

13

exam noting a limited range of motion in both shoulders. (Tr. 303-309) She further limited Plaintiff with regard to even moderate exposure to hazards, such as machinery and heights.

Treating source, Nurse Stanley, also completed two medical source statements concerning Plaintiff's physical limitations. In February, 2011, she found Plaintiff capable of frequently lifting/carrying only five pounds; standing and walking a total of one hour per day; sitting for total of one to two hours per day; and, reaching, handling, fingering, gripping, and feeling less than two hours out of an eight-hour workday. Further, Nurse Stanley opined Plaintiff would need to lie in a supine position for five to six hours during an eight-hour workday; could not climb, balance, squat, kneel, crouch, bend, or stoop; and, she would need to avoid all exposure to extreme heat, wetness, and hazards. (Tr. 374-375) One month later, Nurse Stanley indicated Plaintiff could lift/carry less than ten pounds frequently; reach, handle, finger, grip, feel, and finger less than two hours per workday; climb, balance, squat, kneel, crouch, and bend less than two hours per workday; needed to elevate her lower extremities twice per day and lie in a supine position for three hours during the workday; would need three or four work breaks during the workday; must avoid concentrated exposure to noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards; and, she must avoid all exposure to extreme cold, extreme heat, wetness, and humidity. (Tr. 1307-1309)

In May 2013, Dr. Robert Redd, another non-examining consultant reviewed the record and concluded that there were no severe medically determinable impairments in the file. (Tr. 535-536)

On remand, the ALJ supplemented the record with the consultative examination of neurologist, Dr. David Oberlander. He documented slight and subtle weakness in both hands;

14

slightly impaired fine motor skills in the right hand; reduced sensory appreciation to light touch in the left and right index fingers with bilateral Tinel and Phalen signs, and an electromyography showing bilateral carpal tunnel syndrome. Dr. Oberlander assessed limitations related to her hand and shoulder impairments, limiting Plaintiff to frequent overhead reaching and occasional handling, fingering, feeling, and pushing/pulling bilaterally. (Tr. 1006-1010)

The ALJ dismissed Nurse Stanley's assessments, finding them both internally inconsistent and unsupported by the overall record, including her own treatment notes. Giving great weight to the majority of Dr. Tucker's assessment, the ALJ concluded that his findings regarding low grip strength were unsupported by his examination notes. These findings are also inconsistent with the findings of Dr. Oberlander; and, we note that "'[g]reater weight is generally given to the opinion of a specialist about medical issues in the area of specialty, than to the opinion of a non-specialist.'" *Brown v. Astrue*, 611 F.3d 941, 953 (8th Cir. 2010) (quoting *Thomas v. Barnhart*, 130 F. Appx 62, 64 (8th Cir. 2005) (unpublished per curiam)).

Similarly, the ALJ found Dr. Oberlander's assessment to be supported by objective medical evidence of record, but concluded his findings of occasional handling and fingering were at odds with his narrative report. In spite of his dismissal of Dr. Oberlander's handling and fingering limitations, Plaintiff points out that the ALJ ultimately restricted her to occasional handling and fingering. This appears to have been a mere typographical error. It has no effect on the overall ruling in this case.

Further, although the ALJ made no direct mention of his disagreement with Dr. Oberlander's sitting restrictions, he repeatedly noted Plaintiff's reports that she spent her day

15

watching television and reading magazines. A review of the record also makes clear that Plaintiff never voiced any complaints to her doctors regarding her alleged inability to sit for extended periods. Aside from the medical source statements, her treatment providers made no notation in the record that she was unable to perform the sitting requirements of sedentary work.

We do note the ALJ's statement that, during their treatment of the claimant, there is no indication in the medical records that any of the claimant's treating physicians gave any opinion on the claimant's ability to work. Contrary to Plaintiff's interpretation, we find this statement to be referencing the actual treatment records themselves, rather than the RFC assessments completed by her treating sources in an effort to help Plaintiff receive disability benefits. The records themselves contain no indication that any of her doctors ever advised her to limit her lifting, carrying, sitting, standing, walking, reaching, handling, fingering, or fine manipulating. Further, the treatment records reveal no self-imposed limitations reported by the Plaintiff to her physicians. Thus, while the RFC assessments do speak for themselves, the ALJ did not err in noting that none of the limitations expressed in the RFC assessments are reflected in the treatment notes.

Further, as discussed above, this Court's previous remand order did not direct the ALJ to adopt the opinions of Nurse Stanley and/or Dr. Tucker in toto. The order merely remanded the matter for further consideration of those assessments, in light of the evidence, and to allow the Administration to ensure that all of the medical evidence submitted to the Appeals Council was included in the record. Thus, while the Court did agree that manipulative restrictions were necessitated by the record, the Court did not opine as to the appropriate degree of restriction.

That is a determination that rests solely in the purview of the ALJ, and after reviewing his opinion on remand, the Court finds substantial evidence supporting his RFC determination.

### D. **Jobs Existing in Significant Numbers:**

In her final issue, Plaintiff contends that the jobs identified by the vocational expert do not exist in significant numbers in the state of Arkansas. The vocational expert testified that Plaintiff could perform the positions of call-out operator and surveillance system monitor. The expert indicated that there are 30 callout operator positions available in Arkansas and 8,004 available in the nation, and there are 28 surveillance system monitor positions available in Arkansas and 12,562 nationwide. (Tr. 452-453) Contrary to Plaintiff's argument, however, work exists in significant numbers when there are a significant number of job available either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a). The statute specifically states that it does not matter whether work exists in the immediate area in which the claimant lives, a specific job vacancy exists for the claimant, or whether the claimant would be hired if he or she applied for the work. *Id*.

As previously noted, the vocational expert identified a total of 58 callout operator and surveillance system monitor positions available within the state of Arkansas and 20,566 in the national economy. Accordingly, we are satisfied that jobs exist in significant numbers in the national economy that the Plaintiff could perform.

Additionally, because we have concluded that the ALJ's RFC assessment was supported by substantial evidence, we find Plaintiff's objection to the ALJ's reliance on the vocational expert's testimony in response to hypothetical questions including those limitations to be without merit.

## V. Conclusion:

Based on the foregoing, I recommend affirming the ALJ's decision and dismissing the Plaintiff's Complaint with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of July, 2017.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE